IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Income Tax

| | | |
|---|---|---|
| EARL R. FOSTER, and MANNETTE D. FOSTER, | ) ) ) | |
| Plaintiffs, | ) ) | TC-MD 240488R |
| v. | ) ) | |
| DEPARTMENT OF REVENUE, State of Oregon, | ) ) ) ) | |
| Defendant. | ) | **DECISION** |

Plaintiffs appealed Defendant's Notice of Assessment dated April 9, 2024, for the 2019 tax year. A trial was held on July 10, 2025, in the courtroom of the Oregon Tax Court. Earl Foster (Foster) represented Plaintiffs and testified. Jasmine Yuen (Yuen), an auditor, appeared and testified on behalf of Defendant. Plaintiffs' Exhibits 1 through 15 and Defendant's Exhibits A through N were received into evidence without objection.

## I. STATEMENT OF FACTS

Foster owns and operates an appraisal business. (Compl at 4.) In 2019, he performed appraisal work primarily in California through contacts with the Veteran's Administration, while attempting to build his business in Oregon. (*See also* Def's Ex C at 1.) Foster testified that he made 23 business trips to California in 2019. (*See also* Ptfs' Ex 1.)

Plaintiffs reported $68,837 in gross receipts on their 2019 Schedule C along with deductions for car and truck expenses ($5,661), vehicle rent ($4,250), and travel ($17,500). (Def's Ex A at 12.) Defendant issued a Notice of Deficiency dated April 20, 2023 (Notice), disallowing all car and truck expenses, reducing rent expenses by $1,864, and disallowing all travel expenses. (Def's Ex B at 2-3.)

Defendant also increased Plaintiffs' taxable income by $34,788, based on a bank deposit analysis identifying unexplained deposits. (*Id.* at 3.)

On November 2, 2023, Defendant conducted a conference with Plaintiffs and issued a Conference Decision Letter dated April 3, 2024, and a Notice of Assessment dated April 9, 2024. (Def's Ex C at 1-6; Def's Ex D.) Defendant reduced Plaintiffs' unidentified income to $18,815. (Def's Ex C at 3.) Defendant allowed $351 in airline travel expenses for one trip from Portland to Long Beach, CA, departing December 19, 2019, and returning December 21, 2019. (*Id.* at 5.) Defendant allowed $219 in car and truck expenses for two Oregon business trips—an April 17, 2019, trip to Philomath and a November 18, 2019, trip to Eugene. (*Id.* at 4.) Defendant also increased allowed rent expenses to $2,984, which included $2,886 for car rentals and $98 for gas for the rentals. (*Id.* at 5.) At trial, Defendant further conceded to a total of $3,922.30 for airline travel expenses and an additional $86.14 in lodging expense for a July 12, 2019, stay, for a total of $2,582.54 for lodging.

Following the conference with Plaintiffs, Defendant decreased Plaintiffs' unidentified income to $18,815. (Def's Ex C at 3.) The remaining unidentified deposits were shown on an additional worksheet, which Yuen testified had been provided to Plaintiffs. (Def's Ex E at 3.) Yuen testified that Plaintiffs offered inconsistent explanations for the remaining unidentified deposits and provided Defendant with no further documentation to explain them.

Plaintiffs' American Express statements show $3,922.30 for airfare and $3,245.93 for lodging expenses. This includes a Rodeway Inn charge of $88.83 on October 10, 2019, labeled "CARDEPOSIT," which corresponds to the same dates of stay as another transaction for the same hotel. (Ptfs' Ex 2.) One page of Plaintiffs' Jet Blue Mastercard statement for December 2019 shows $98.20 in lodging expenses. (Ptfs' Ex 3.) Plaintiffs' American Express statements

show $3,877.97 in car rental expenses, and the Jet Blue Mastercard statement shows $181.44, for a total of $4,059.41.

Foster performed appraisal work in California during the tax year at issue, as documented in a log submitted at trial. (Ptfs' Ex 1.) The log recorded each job with a file number, property address, appraised value, inspection date, and total fee. (*Id.*) Foster also submitted two mileage logs—his original log and a second version updated to include additional details requested by Defendant. (Ptfs' Exs 13 and 15.) The logs record the date, destination, total mileage, and brief notes. The entries generally fall into three categories: 1) trips to and from the airport, 2) travel related to a trip where Foster "Drove to CA to work," and 3) Oregon travel, including trips to Costco for fuel, meetings with property owners for bids, documents submissions, and attendance at seminars. Foster testified that for the airport trips, he departed from his home office.

Defendant's bank deposit analysis identified unexplained deposits in Plaintiffs' Wells Fargo, Schools First, and Advantis accounts. (*See* Def's Exs F – I.) Defendant provided Plaintiffs with an initial worksheet detailing unidentified deposits, and Foster made handwritten notations about some of the deposits. (Ptfs' Ex 6.) Foster testified that the unidentified deposits were non-income transfers, including reimbursement from his son's account for purchases made on his behalf, and Venmo transfers from family, but Plaintiffs did not submit documentation to verify these transactions. Foster further testified that some deposits constituted transfers between Plaintiffs' own accounts.

Plaintiffs submitted their Advantis bank statements at trial, and Foster identified that those statements showed two $3,500 withdrawals on July 6, 2019. (Ptfs' Ex 7 at 12.) Foster testified that a $3,500 withdrawal was used to help his daughter buy a vehicle. Plaintiffs also submitted a $3,500 check from the Advantis account dated July 6, 2019, paid to Foster, as

evidence of this transfer. (Ptfs' Ex 8.) Foster did not provide documentation explaining the purpose of the second $3,500 withdrawal. Plaintiffs' Wells Fargo statements show a $3,600 deposit on October 23, 2019, and a $3,500 deposit on November 6, 2019. (Def's Ex F at 23.)

## II. ANALYSIS

There are two issues in this case. The first is whether Plaintiffs are entitled to deductions for travel related expenses during the tax year at issue. The second is whether Plaintiffs had unreported income for that same year. Plaintiffs bear the burden of proof because they are the parties seeking affirmative relief. ORS 305.427.[1] To satisfy their burden, Plaintiffs must establish their case by a preponderance of the evidence. *Id.* A preponderance of the evidence exists when "the facts asserted are more probably true than false[.]" *Cook v. Michael*, 214 Or 513, 527, 330 P2d 1026 (1958).

A.    *Business Expense Deductions*

Oregon defines taxable income in the same manner as the federal Internal Revenue Code (IRC) does, subject to certain modifications that are not relevant here.[2] ORS 316.007; ORS 316.022(6). Under IRC section 162(a), a taxpayer may deduct ordinary and necessary expenses incurred in carrying on a trade or business. Conversely, IRC section 262 generally disallows deductions for "personal, living, or family expenses" not otherwise allowed under the IRC. Certain categories of business expenses, including travel and use of passenger vehicles, are subject to heightened substantiation requirements under IRS section 274(d).

/ / /

/ / /

---

[1] The court's references to the Oregon Revised Statutes (ORS) are to the 2017 edition.

[2] The court's references to the IRC are to the Internal Revenue Code of 1986, as amended and in effect for the tax year at issue.

If a taxpayer fails to meet these requirements, the deduction must be denied regardless of whether the expense appears reasonable. *Schladweiler v. Comm'r*, 80 TCM (CCH) 681 (2000), 2000 WL 1690282 at *3 (US Tax Ct), *aff'd*, 28 F Appx 602 (8th Cir. 2002).

The court addresses the claimed expenses in the following three categories: car and truck expenses, airfare and rental car expenses, and other travel-related mileage.

1.      *Car and Truck Expenses*

Under Treasury Regulations, vehicle expenses can be substantiated in one of two ways. First, a taxpayer may meet the "adequate records" requirement by keeping a contemporaneous diary or log showing the date, miles, and business purpose for each use of the vehicle. *See* Treas Reg § 1.274-5T(c)(2). A mileage log that specifies the location, date, and purpose of each trip would meet these requirements. *Kilpatrick v. Comm'r*, 112 TCM (CCH) 277 (2016), 2016 WL 4521629 at *5 (US Tax Ct). However, generalized or incomplete logs, such as those that only list total mileage or fail to specify the business purpose, are insufficient. *Id*. The second way a taxpayer without adequate records may substantiate the elements is by relying on other "sufficient evidence"—generally a combination of the taxpayer's detailed statement and other corroborative evidence for each element. Treas Reg § 1.274-5T(c)(3)(i).

Plaintiffs claimed $5,661 for car and truck expenses in the tax year at issue. Plaintiffs submitted two mileage logs to substantiate these expenses. Defendant claims the logs are insufficient to substantiate the mileage expenses, as they contain multiple inconsistencies, overstate miles per trip, and lack beginning and ending locations.

The court looks to the second log, which Foster testified was a recreation of the first and includes additional details. For each entry, the log includes the date, destination, total mileage, and a short explanatory note. As explained above, the log generally contains three categories of

entries: 1) trips to and from the airport; 2) trips where Foster drove to California for work and drove to various job sites while there; and 3) Oregon travel, including trips to Costco for fuel, to meet property owners for bids, to submit documents, and to attend seminars. The airport trips generally do not include a departure address, though the court accepts Foster's testimony that he departed from his home office for these trips. However, most of the airport trips also do not include both departure and return dates, as required under strict substantiation. Instead, the entries only provide one date for the round-trip journey, presumably either the departure or return date, along with the total mileage of the trip. Some entries contained inaccuracies and exaggerated trip mileage. Therefore, the mileage expenses for the airport trips were not sufficiently substantiated.

For the second category of entries, Foster included mileage for a trip where he "Drove to CA to work." However, he neither provided specific departure or destination locations, nor included any substantiating documentation for the trip. The log also includes mileage for visiting job sites while in California, including destination addresses. Again, no departure addresses were included.[3] These expenses were not sufficiently substantiated.

The final category of entries are trips Foster made in Oregon. Almost none of these entries provide the starting location, and only some provide the destination address. Plaintiffs did not provide any supporting documentation to corroborate the business purposes of these trips. As with the airport trips, many entries had inaccurate or exaggerated mileage.

/ / /

/ / /

---

[3] While it might be presumed Foster departed from the hotel where he was staying, no information was provided regarding this detail, and the court will not infer.

Defendant allowed $219 in car and truck expenses for two Oregon business trips Foster was able to substantiate through his job list. The court upholds this amount and disallows Plaintiffs' remaining claimed mileage expenses due to lack of adequate substantiation.

2. *Airfare Expenses*

The court next analyzes whether Plaintiffs are entitled to deduct expenses incurred while Foster traveled to California for business. Airfare expenses are subject to IRC section 274(d) heightened evidentiary standards. To be deductible, the taxpayer must provide documentation showing the amount, date, and business purpose of the expense. Treas Reg § 1.274-5T(b)(2)(i)-(iv) (as amended in 2010). Without such documentation, the expenses are not deductible, even if they appear to be business-related.

Plaintiffs' credit card statements, job log, and Foster's testimony show a consistent pattern of Foster's business travel to California in the tax year at issue. With few exceptions, Foster flew on Jet Blue, rented a car from the same vendor, and stayed in one of three hotels. His stays usually lasted a few days and included in-state trips to multiple job locations for his appraisal work. At trial, Defendant conceded $3,922.30 for airline expenses. This matches the total of all 2019 Jet Blue tickets purchased according to Plaintiffs' American Express statements. Foster was able to substantiate the tickets through his job log and corresponding lodging and car rental expenses. The court also finds Foster's testimony credible that these trips were for business purposes. Plaintiffs have not provided any additional documentation to substantiate an amount greater than Defendant's concession.

/ / /

/ / /

/ / /

3.  *Lodging*

Plaintiffs' American Express statements show $3,245.93 in lodging expenses for the tax year at issue.[4]  Plaintiff's JetBlue Mastercard statement shows $98.20 in lodging expenses.  Defendant conceded $2,496.40 in lodging expenses prior to trial.  At trial, Defendant conceded an additional $86.14 expense for lodging on July 12, 2019, bringing Defendant's total concession to $2,582.54.

Defendant claims some of the lodging is not supported by airline tickets.  However, all the lodging dates shown on Plaintiffs' credit card statements have corresponding car rentals and match dates on Foster's job log.  Only three trips to California with hotel and rental car expenses lack corresponding airline tickets.  The American Express statements include two isolated airline tickets (without corresponding hotel and rental car expenses) with departures near two of these trips, so it is conceivable Foster could have changed the reservation dates of the tickets.  Regardless, the court finds the consistent evidence of rental car expenses and the job log, combined with Foster's testimony that these trips were for business purposes, to be sufficient to substantiate these expenses.  The court allows a total of $3,255.30 in lodging expenses, which includes the total expenses shown on Plaintiffs' credit card statements but excludes the $88.83 deposit charge explained above.

4.  *Car rental*

Plaintiffs' American Express statements show $3,877.97 in car rental expenses, and the Jet Blue Mastercard statement shows $181.44, for a total of $4,059.41.  Defendant allowed $2,984 in car rental expenses based on receipts submitted by Plaintiffs.

---

[4] As noted previously, a Rodeway Inn charge of $88.83 on October 10, 2019, had a notation of "CARDEPOSIT," and the statement shows another charge for the same hotel for the same dates.  This charge is excluded because it appears to be a deposit or duplicate expense.

Plaintiffs' credit card statements provide the total amounts paid for the car rentals. All rentals correspond with Foster's business log and with hotel stays. In addition, as explained above, almost all rentals also correspond with dates of arrival in California based on airline ticket purchases. Foster testified that these trips were for business purposes. His testimony, combined with the submitted documentation, is sufficient to reach the substantiation requirement of IRC section 162. The court allows $4,157.41 in car rental expenses, which includes the $4,059.41 total rental charges on the credit card statements plus $98 for fuel.

In total, the court allows $11,335.01 in business travel expenses for the tax year at issue, which includes airfare, lodging, and car rentals. The court now turns to the issue of whether Plaintiffs had unreported income in the tax year at issue.

B.      *Gross Income Adjustment*

Gross income is defined as "all income from whatever source derived." IRC § 61(a). A taxpayer has a duty to keep their financial records to prove their income and deductions. Treas Reg § 1.6001-1(a). "Where a taxpayer's books do not clearly reflect income, the Department of Revenue may demonstrate unreported income 'by any practicable proof that is available in the circumstances of the particular situation.'" *Danielson v. Dept. of Rev.*, TC-MD 160282C, 2017 WL 5158730 at *3 (Or Tax M Div, Nov 7, 2017) (quoting *Brenner v. Dept. of Rev.*, 9 OTR 299, 306 (1983)). The department may use additional methods, such as a bank deposit analysis, to determine a taxpayer's unreported income. *Brenner,* 9 OTR at 302 n 2. "The reconstruction need only be reasonable in light of all surrounding facts and circumstances." *Petzoldt v. Comm'r,* 92 TC 661, 687 (1989). "The bank deposit method is a permissible method of reconstructing income. * * * Bank deposits constitute prima facie evidence of income." *Ekwenugo v. Comm'r*, 102 TCM (CCH) 321 (2011), WL 4484788 at *3 (US Tax Ct). "[T]he

taxpayer must prove that the reconstruction is in error and may do so, in whole or in part, by proving that a deposit is not taxable." *Id.*

Defendant identified $18,815 in unidentified deposits in its bank deposit analysis. Although Foster testified at trial that none of the unidentified deposits were income, Plaintiffs failed to provide additional documentation to substantiate their claims. As stated above, it was Plaintiffs' burden to offer evidence to rebut Defendant's findings. Plaintiffs provided evidence of a $3,500 withdrawal from their Advantis account, which Foster testified was deposited into Plaintiffs' Wells Fargo account to help Plaintiffs' daughter purchase a vehicle. However, the withdrawal was made on July 6, 2019, and the deposit was not made until October 23, 2019, at the earliest.[5] Without further evidence from Plaintiffs, there is no explanation for the more than three-month gap between withdrawal and deposit. Without documentation from Plaintiffs proving that the remaining unidentified deposits are not taxable, the court accepts Defendant's analysis, which increases unreported income by $18,815 for the tax year at issue.

### III. CONCLUSION

After careful consideration of the testimony, documents, and arguments presented, the court concludes that Plaintiffs' appeal is granted in part and denied in part. Plaintiffs substantiated $11,335.01 in business travel expenses but failed to substantiate additional car and truck expenses or rebut Defendant's unreported income findings in the amount of $18,815. Now, therefore,

/ / /

/ / /

---

[5] Plaintiffs' Wells Fargo statements show a $3,600 deposit on October 23, 2019, and a $3,500 deposit on November 6, 2019. (Def's Ex F at 23.)

IT IS THE DECISION OF THIS COURT that Plaintiffs' appeal for the 2019 tax year is granted in part and denied in part as detailed above.

_____
RICHARD D. DAVIS
MAGISTRATE

*If you want to appeal this Decision, file a complaint in the Regular Division of the Oregon Tax Court, by <u>mailing</u> to: 1163 State Street, Salem, OR 97301-2563; or by <u>hand delivery</u> to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your complaint must be submitted within <u>60</u> days after the date of this Decision or this Decision cannot be changed.  TCR-MD 19 B.*

*This document was signed by Magistrate Richard D. Davis and entered on November 24, 2025.*